PIERCE, Judge.
This is an appeal by William H. Steed and Mary Louise Steed, his wife, plaintiffs below, from an adverse final decree entered against them[1] in a suit brought against appellees above named, defendants below, for a declaratory decree and for prohibitory and mandatory injunctions with respect to certain enclosures and additions to an apartment building wherein plaintiff had a leased apartment.
Defendant Starlight Tower, Inc., a corporation, operated a co-operative apartment building in Pinellas County, located at 7000 Beach Plaza, St. Petersburg Beach, containing 70 apartments, and owned the land upon which the building was situated. On October 3, 1958 plaintiff leased an apartment from the corporation for 99 years, beginning January 1, 1959, and also became a stockholder in the corporation. Plaintiff is a practicing attorney in North Carolina and uses the apartment only for four to six weeks each year. The individual defendants are lessees of other apartments in the building.
The west side of the Starlight Tower faces the Gulf of Mexico. Running the entire length of the east side of the building is a common walkway providing access from one apartment to all the other apartments on that floor, and also access to a stairway and elevator which connects the upper floors.
Beginning in April of 1959, the lessees of the corner apartments on the southerly and northerly ends of the east side of the building began constructing enclosures, which encompassed the ends of the common walkway. Each of the enclosures covered an area of approximately five feet by fifteen feet on the southerly end of the building and an area of approximately five feet by twelve feet on the northerly end, and constituted extensions of the particular apartments over the respective ends of the walkway. The enclosure consisted of awning-type windows and an aluminum jalousie door enclosed by a glass partition. Plaintiff was lessee of apartment #407, which was adjacent to apartment #408 leased by one of defendant lessees, Walter A. Sterling, upon which end apartment one of the enclosures had been added.
On October 25, 1964, plaintiff filed amended complaint against the corporation and the other named lessees, contending that the enclosures so constructed were a violation of the provisions. of plaintiff’s lease (which was common in substance to all the other leases except as to time of execution and apartments demised). The specific alleged violation was with respect *232 to Section 1, Article 2, and Section 2, Article 5, of the lease which provided generally for quiet use and enjoyment of the leased premises and all other portions of the apartment building not under lease, with certain exceptions not here material; and provided also that the lessee would not “obstruct or interfere with the rights of other tenants, or obstruct the public halls or stairways or porches of said building * * * At the time suit was filed eleven such enclosures had been built, dating from April 10, 1959 to November 9, 1963. All eleven lessees erecting the enclosures had obtained written consent from the Board of Directors of the corporation for such construction.
The amended complaint alleged that the obstructions deprived plaintiff of the use and enjoyment of “the public halls and/or porches, which said halls and porches are for the common use and enjoyment of all tenants” and prayed for declaratory decree declaring the rights of plaintiff, and that defendants be required to “remove said enclosures, and * * * be enjoined from interfering with or obstructing * * * plaintiff in the use and enjoyment of said area”.
The corporation and the individual defendants filed separate answers, admitting the construction of the enclosures but denying any violation of the terms of the several leases. The answers also denied that the enclosed areas were intended for the common use and enjoyment of all tenants of the building, alleged that the areas encompassed by the enclosures constituted entrance ways to the respective apartments of the individual defendants and were intended exclusively to provide ingress and egress to their apartments, that all such enclosures had been duly authorized by the corporate Board of Directors, and that they were built pursuant to such authorizations. The answers further affirmatively asserted that plaintiff was guilty of laches and was es-topped from making any claim for relief because he had been in possession of his leased apartment during all the more than five year period during which the enclosures were built, without making any attempt to obtain judicial determination of his alleged rights.
Upon the issues so framed the parties took testimony, introduced numerous exhibits, and stipulated upon certain facts. On March 17, 1967, the Chancellor entered final decree, which concisely determined the merits of the controversy and the rights of the parties. The decree is supported by competent and substantial proofs. We approve the same and adopt the pertinent portion thereof as a part of our opinion, as follows:
“This cause came on to be heard on Final Hearing. The parties, through the earnest and diligent efforts of counsel, entered into a partial Stipulation of Facts which, together with all the exhibits introduced and testimony taken, succinctly narrowed the issues herein. In addition, the Court personally viewed the subject premises and observed several of the structures and walkways hereinafter discussed.
At the outset, it is apparent to the Court that the gravamen of the Plaintiff’s Complaint is that the 5 foot wide walkways, extending the entire length of the building from North to South, on each floor thereof, and off which each apartment is entered from the East, is a portion of the building to be ‘enjoyed in common’ with all other tenants; and that the closing in of the North and South ends thereof, by the complained of enclosures (really small rooms or cubicles) constituted an infringement on Plaintiff’s right to enjoy said walkways. In addition, it is contended, such enclosures constitute an ‘obstruction’ of the public halls of the building. However, the Court finds as fact that these walkways are no more than sidewalks, in effect, the sole purpose of which is to provide access to each of the apartments. On the North end, each of these ‘sidewalks’ is closed in by a pantry-like cab *233 inet, extending all the way to the ceiling in which may be stored maintenance equipment or other miscellaneous items. The South end merely permitted anyone to look out over the end railing which overlooks some parking areas and adjacent buildings to the South. To do so, however, would necessitate loitering in the rear of the southernmost apartments on each of the floors.
The Court finds also that the East end of the building is really the rear thereof. The prominent and attractive feature of the entire premises is that it overlooks the Gulf of Mexico, the beaches and beautified landscape, all to the West; and the ‘front’ of the building, and consequently of each apartment, is to the West. Again, then, the complained of enclosures are only at the rear of the corner apartments on the North and South.
Furthermore, the enclosures in no way interfere with, or obstruct, access to any of the apartments, on any floor, or to public stairways or elevator; and it can be said in summary that the only thing the Plaintiff would be denied would be the right, or privilege, to go to any floor, walk to the South end of the ‘sidewalk,’ loiter in the rear of the southernmost apartment and peer over the wall to observe the view to the South. The lease gives him no vested right to do this. Thus, from the foregoing, this Court holds that his rights under the lease have not been breached by any of the Defendants.
The Court further finds that the Plaintiff was, or should have been, aware of the construction of some of these enclosures as far back as 1959; and, indeed, admits that he knew of at least 4 of these as early as 1961. Thereafter, he had every opportunity to observe construction of the remaining seven enclosures of which he complains long before he filed this suit. In addition it is undisputed that he worked with another member of the Co-operative to amend the standard lease used in the conveyance of the various apartments in the building; and measures were taken in that amendment to provide for, or protect, the rights of those tenants in the corner apartments who had secured, or might thereafter secure, permission from the ‘Board of Directors’ to construct such enclosures. In view of his knowledge, therefore, together with the length of time since acquiring the knowledge, and in consideration of the Doctrine of Comparative Injury, the Court finds, and so rules, that the Plaintiff is estopped bringing this action.
For purposes of clarification of this Order, and in the interest of completeness, the Court does not find that the Plaintiff is guilty of laches.”
The decree thereupon adjudged the equities to be with the defendants and dismissed the amended complaint. We affirm.
LILES, C. J., and HOBSON, J., concur.

. Mrs. Steed is now deceased, and hereinafter plaintiffs will be referred to in the singular as plaintiff.